## Richmond.

## STEPHEN PUTNEY SHOE CO. V. RICHMOND, FREDERICKSBURG AND POTOMAC RAILROAD CO.

### January 16, 1919.

1.  LAW OF THE CASE.—Where the parties, issues and material facts on a second appeal are the same as on a former appeal, the decision and decree of the appellate court on the former appeal is the law of the case in so far as such decree passed upon and adjudicated the questions which are presented for decision upon the second appeal.

2.  RAILROADS—*Right of Way—Spur Track to Factory—Case at Bar.* —A decree in a suit between a company operating a factory and a railroad in regard to the location of a spur track to the factory, was as follows: "Said railroad company is now and hereby authorized and required to select and locate the strip aforesaid along a route to be designated by said railroad company, provided such route is reasonably safe and convenient * * *." The location chosen by the railroad was objected to by the factory company as not "reasonably safe and convenient." First: Because the operation of the cars on the tracks thereon would be dangerous by reason of the curves therein and the grade thereof, if the tracks are built to conform to the natural lay of the land. But this was held as yet a moot question, as no grades had as yet been prescribed by the railroad company for the proposed tracks. Secondly: Because the operation of cars would be expensive, as they could not be operated by the pinch-bar method. But it was held that the deed fixing the rights of the parties contemplated the use of locomotives, though the tracks should be constructed so as to allow the factory company to move single cars for short distances to and from its building by hand-power by the use of pinch-bars, since there was testimony in the case showing that to have been in the contemplation of the parties.

3.  EASEMENTS—*Right of Way—Driveway—Law of the Case.*—In a suit between a railroad company and a shoe factory in regard to their rights in a strip of land connecting the factory with the tracks of the railroad company, a decree permitting the use of such strip as a driveway was reversed, the Supreme Court of Appeals being of opinion that the rail-

road company was not entitled to make such use of said strip
of land as would be made of it if it were a street.

*Held:* That a second decree that the railroad company "has
the right to permit * * * vehicles to pass through any and
all parts of the said twenty-seven foot strip at any time and
for any purpose * * *," was not in accord with the former
decree of the Supreme Court of Appeals.

Appeal from a decree of the Circuit Court of Henrico
county. Decree for defendant. Complainant appeals.

*Amended and affirmed.*

This is the second appeal in this cause. See *Stephen Put-*
*ney Shoe Co.* v. *R. F. & P. R. R. Co.,* 116 Va. 211, 81 S. E.
93, for the report of the case on the former appeal.

The same parties were before the court on the former,
as on the present, appeal and the subjects of controversy
between them then were the same as they are now.

The appellant will hereinafter be designated the shoe
company and the appellee the railroad company.

The derivation of the rights of and the original issues
between the parties involved in the cause will appear from
the record of and opinion of this court on the former ap-
peal.

The controversy on the former and on the present appeal
is twofold. One subject of controversy is, what is the
proper location of a right of way for certain railroad tracks
as provided for in a certain deed under which the shoe
company received a conveyance of the lot which it owns
in fee. The other subject of controversy is what are the
rights of the parties, respectively, in, to, over and upon a
certain twenty-seven foot strip of land in width by 299 ft.
4 in. in length, as such rights are prescribed in said deed.

The lot owned by the shoe company is a part of a larger
body of land, the old fair grounds (formerly owned by
the fair grounds company, now by the railroad company),
near the western limits of the city of Richmond, extending

from Broad street to the right of way of the railroad company. The fair grounds company was the common grantor of the shoe company and the railroad company. The deed above mentioned was from the fair grounds company to the shoe company and will be hereinafter referred to as the 1903 deed. The location of the larger body of land, owned by the railroad company; of the lot owned by the shoe company and of its warehouse building and certain railroad tracks thereon; of the twenty-seven-foot strip of land immediately adjacent to and on the east side of such lot; and of the right of way for railroad tracks provided for in the 1903 deed as the shoe company claimed such right of way should be located according to the position taken by it in the cause prior to and upon the former appeal, will all appear from the following diagram, when it is considered in the light of the note below.

NOTE.—The width of the right of way for the railroad tracks mentioned above is not shown by the above diagram, and the two tracks in question are shown only a part of the way from the northern line of the lot of the shoe company to the main line of the railroad company; but the position of the shoe company in the cause prior to and upon the former appeal was that such tracks, so far as laid from said northern line, as shown on such plan, fixed the proper location of said right of way, and that, when called for by it, that one of the two tracks shown which extends only a part of said way should be extended along-side the other to said main line, so that such right of way should provide for ultimately carrying two tracks, so located.

1. The positions taken by the parties respectively and the material facts bearing on the subject of the proper location of the right of way for the tracks aforesaid before the court on the former appeal, were as follows:

The railroad tracks shown on the above diagram, which were located on the lot of the shoe company, and those extending from the northern line of such lot toward and to the main line of the railroad company, were located and constructed under a certain agreement entered into between said parties in 1906. This agreement, however, contained a provision under which it might be terminated, and accordingly it was terminated in 1908. The agreement however, contained also the following, among other provisions, namely:

"Said railroad company reserves the right at its option to change the location of that part of said tracks which are outside of the property of the Putney Company at any time and to use the same for any purpose it may deem proper, provided that such change of location, or such use, does not interfere with the shipping to or from the property of said Putney Company.

"The acceptance of the tracks herein provided for shall be in lieu of the rights of Putney Company under said deed from the fair grounds company and others" (the 1903 deed) "to have two tracks as therein provided during the existence of this contract, but on the termination of this contract the Putney Company shall be remitted to all its rights under said deed as if this contract had not been made."

In said 1903 deed the fair grounds company and a trustee, who was a mere formal party, were designated as "the parties of the first and second parts" and the shoe company as the "party of the third part." The provision in such deed with respect to the right of way for railroad tracks aforesaid was as follows:

"The parties of the first and second parts covenant and agree that they will permit the party of the third part and its assigns to use a strip of land forever for the purpose of constructing thereon one or two railroad tracks running from the main line of Richmond, Fredericksburg and Potomac Railroad Company to the said property hereby conveyed to the said party of the third part. Said strip of land to be selected and designated by the parties of the first and second parts across its land. Said party of the second part covenants and agrees to construct, or cause to be constructed and completed, one or two tracks when called for by said party of the third part, from the main line of Richmond, Fredericksburg and Potomac Railroad across said strip of land to the north line of the property hereinbefore conveyed to said party of the third part, for the use of the said party of the third part and its assigns, and then to connect with the tracks placed by said party of the third part upon their lot so purchased."

The shoe company was the plaintiff in the cause as originally instituted. By its pleadings in the cause, its position prior to and upon the former appeal was, in substance, that while the railroad company as grantee of the fair

grounds company had originally the right to select and designate the location of the strip of land for the railroad tracks mentioned in the clause of the 1903 deed above quoted, extending from the northern line of the lot of the shoe company to the main line of the railroad company, the railroad company by its location and construction of the tracks, shown on the diagram above, from its main line to the northern line of the shoe company lot at the point of juncture of such tracks with the tracks located on such lot, had elected and selected once for all the location of such right of way as a permanent location, (subject to the right of the shoe company at any time to require two tracks, and after the termination of the 1906 agreement the railroad company could not change such location without the consent of the shoe company. That the shoe company had built its warehouse on the lot and located its tracks thereon, from B. to C., as shown on said diagram, through the centre of its said building, to conform to the location of said right of way for said railroad tracks made by the railroad company as aforesaid, and that neither at the point of juncture of such right of way with the northern line of the shoe company's lot, to-wit, at the point of entrance of the tracks thereon into the shoe company's building, nor elsewhere, could the location aforesaid of such right of way be changed, but must remain as if it had been located under the 1903 deed without regard to the 1906 agreement.

The railroad company, by its pleadings in the cause, took the position prior to and upon the former appeal, in substance, that its action, in the selection and location of said right of way from the northern line of the shoe company's lot to the main line of railroad aforesaid, and its construction of said tracks from such northern line of such lot to such main line of railroad, was not under the 1903 deed, but only under the 1906 agreement; that upon the termination of the latter agreement, by the express terms thereof, the

railroad company was remitted to its right under the 1903 deed to make such selection and location; and that, accordingly it announced that for reasons set forth in its pleading, which it is alleged would be inequitable, unjust and unreasonable to disregard, it did then select a certain location mentioned and described in its pleadings, to-wit; a strip of land twenty-three (23) feet in width, running from the northern boundary line of the said shoe company's lot to the said main line of railroad, the exact location of which was shown on a certain plat filed in the cause.

Such location of such strip of land for said railroad tracks was from a part of the northern line of the said lot of the shoe company which was near the northeastern corner of such lot, and lay thence parallel, or approximately parallel, with the location of said tracks constructed under the said 1906 agreement, until, nearing the main line of the railroad company, the former approached the single track located under such agreement by a gradual curve until it formed a junction with such main line of railroad almost at the same point as did such single track.

The shoe company declined to accept the proposed new location of said tracks as "announced" by the railroad company as aforesaid and in this connection the shoe company by its further pleadings in the cause made the following, among other allegations:

"This plaintiff avers that such defendant has no right to remove any tracks upon its land which will disconnect the rails on the property of the plaintiff and avers that such action would greatly injure and would practically destroy the business of this plaintiff and would be against the rights of this plaintiff and against the covenants of said fair grounds company and their assignee and against the covenant of the defendant."

Referring to the location aforesaid, "announced" as aforesaid by the railroad company, the shoe company alleged "* * that said location does not conform to the terms of

the covenant which provides that the tracks on said right of way shall connect at the northern line of plaintiff's lot with the tracks placed by said plaintiff upon the lot so purchased by it;   *   *."

"This plaintiff further alleges that to permit the defendant to locate said tracks according to said now proposed location will defeat the very covenant itself, since the covenant calls for two tracks for the business interests of this plaintiff, while the proposed location will only permit the plaintiff to use one track at a time.  If the tracks are placed side by side in the eastern portion of the building of the plaintiff, as claimed by defendant, it will be seen that the track near the eastern wall can only be loaded from one side, the west side, and the other track being just west thereof, the person loading will always be in danger, and if there is a car on the western track that it will prevent the loading of the car on the eastern track.  This is an effort to defeat the spirit of the contract and to hamper and inconvenience the plaintiff in its business."

Upon issues presenting the aforesaid antagonistic positions of the parties on the subject of the proper location of said right of way for said railroad tracks under the said 1903 deed and upon certain evidence, in addition to such deed and said 1906 agreement, which is not material to be set forth here, the court below, on July 30, 1912, entered the decree which was under review on the said former appeal.  The material provisions of such decree concerning the location of such right of way were as follows:

"As to the right of way, for track purposes, to which said Stephen Putney Shoe Company is entitled—the court is of opinion and doth decide, as follows: viz:

"1.  The land conveyed to said railroad company by" * * (the 1903 deed) "was and is subject to the burden that a strip of said land may be used by said shoe company and its assigns for the purpose of constructing on said strip one or two railroad tracks.

"2.   Said railroad company had, and still has, the pri-
mary right to select and designate the location and course
of said strip.   The exercise of that right was deferred by
contract between said shoe company and said railroad
company, dated March 27, 1906," (*    *    the 1906 agree-
ment)    *    *.   "Said railroad company must, however, be
considered as having acquiesced in the present point of
entrance into said shoe company's building as the point
at which must be connected the tracks above referred to.

"3.   Said railroad company is now and hereby author--
ized and required to select and locate the strip aforesaid,
along a route to be designated by said railroad company,
provided such route is reasonably safe and convenient, and
that said strip shall be of sufficient width for two tracks,
and that said strip shall be so located as to permit the proper
operating connection of tracks thereon with the present
tracks at the aforesaid point of entrance into said shoe
company's building, and that said railroad company shall
notify said shoe company of the route selected.

*      *      *      *      *      *      *      *      *      *

"5.   Before proceedings to incur any expense hereunder,
said railroad company is directed to enquire of said shoe
company, (1) whether the latter desires two tracks or only
one track to be constructed, and (2) whether said shoe com-
pany prefers to construct, or cause to be constructed, the
road-bed and track or tracks, rather than have such
construction done by said railroad company.   Within thirty
days after such enquiry is communicated to said shoe com-
pany, the latter is required to deliver to said railroad com-
pany a complete and definite reply to each of the questions
aforesaid; and, in the event of its failure to do so, said rail-
road company shall proceed to construct the tracks. If, how-
ever, such reply is made, as above required, and said shoe
company indicated its preference that the construction afore-
said be done by said railroad company, the latter shall pro-

ceed to construct either one track, or two tracks, whichever may be stated in said reply.

"6.   The cost and expense of grading and constructing a roadbed, and placing thereon the proper equipment, shall, in any event, be paid by said shoe company, which shall fully reimburse said railroad company for actual cost incurred by the latter in connection with such matters. . *    *

"7.   If said shoe company, in reply to the enquiry aforesaid, indicates its preference to do, or cause to be done, the construction referred to in said enquiry, then and in that event it is required to proceed promptly therewith, and to complete the same within a reasonable time.   But all construction must be upon the strip which said railroad company shall designate, as hereinbefore required, and must be done under the supervision of said roalroad company's engineers, and along lines and grades to be prescribed by said railroad company."

The decree of this court (the Supreme Court of Appeals) on the former appeal, in so far as it concerned said right of way for said railroad tracks provided for in said 1903 deed, was as follows:

"*    *    the court *    *    *    is of opinion, for reasons stated in writing and filed with the record, that there is no error in the decree appealed from, in so far as it determines the rights and obligations of the parties as to the location of the right of way for a railway leading to the shoe company's property over the railroad company's land and the tracks, etc., laid thereon, and the said decree is in this respect affirmed."

Subsequent to the last named decree the railroad company selected a location of the right of way aforesaid, which provided for two tracks of railroad.   The point of departure of such right of way from the northern line of the lot of the shoe company aforesaid is from the centre of the said building thereon and is so located that the two tracks to be constructed on such right of way will connect with the pres-

ent tracks on the lot of the shoe company, located, as aforesaid, through the centre of its said building, at the aforesaid point of entrance into such building.   Such right of way then extends, by a slight curve, to the east for a little distance, and then, by a slight reverse curve, extends still farther to the east until it reaches a distance of approximately fifty feet to the east of the right of way as located under the 1906 agreement as aforesaid, then extends parallel with the latter for some distance until it approaches the main line of the said railroad it curves to the north and gradually approaches the location of the right of way under the 1906 agreement and forms a junction with the said main line at practically the same point as did the aforesaid 1906 location.

In May 1914 the railroad company notified the shoe company of its selection of the location last named and submitted to the shoe company the enquiries directed by the decree of July 30, 1912, contained in paragraph 5 thereof above quoted.

The shoe company promptly replied to the effect that it did not accept, but rejected the proposed location, and, answering said enquiries, made the following statements:

"(1). We desire to have two tracks connecting our lot and then to converge into one track at a convenient point after leaving our lot.

"(2). We desire you to construct the tracks and we will pay you for the actual cost incurred by you, if constructed as herein designated.

"We desire to place two tracks on our open lot or space between the western line of our lot in such manner as to furnish the best railway facilities for our premises.   The two tracks on our lot will run to our northern line adjoining your lot, and the centre of each track is designated by a stake on the northern line of our lot.

"You will, therefore, construct two tracks to connect at those points, with our designated tracks to be constructed,

and extend the two tracks from those points to a convenient point to converge into one track and thence the one track to run on the east side of this right of way to the main line of the Richmond, Fredericksburg and Potomac Railroad Company's right of way, in a reasonable safe and convenient route over a selected strip of land as provided in said decree. We reserve our right to place an additional track on the right of way at a future time * * *"

The shoe company submitted with its said reply a diagram on which the location it demanded of said right of way is shown. Its point of departure from the northern line of the said lot of the shoe company, and of entrance of the tracks thereon, upon such lot is outside of said building and immediately to the west of the northern corner thereof. Such location of such right of way then extends in a straight line in a northeasterly direction, on the same course as that of the outside line of the western side of said building, until it approached nearly to the main line of railroad aforesaid and there curves slightly to the north to a point of junction with such main line immediately to the northwest of the point of junction therewith of the right of way as located under the 1906 agreement as aforesaid.

The location of the right of way last mentioned as made by the shoe company is designated "A" as shown on the following diagram; that made by the railroad company as next above mentioned is designated "C" on such diagram; and that made under the 1906 agreement as aforesaid is designated "B" on such diagram.

Later by petition in the cause of the railroad company and answer of the shoe company thereto issue was joined between them as to whether the location of the right of way last made by the railroad company complied with the requirements of said decree of July 30, 1912, affirmed by the decree of this court on appeal, or whether the shoe company had the right to have same located as it demanded by the position then taken by it as aforesaid. The shoe company

contended, in substance, that it did not comply in the following particulars, namely:

(a). Because the route is not "reasonably safe and convenient" as required by the July 30, 1912, decree, in that "it

contains dangerous reverse curves, *   *   it is filled with curves and the natural lay of the land is irregular *requiring* great danger in operating cars upon a track built to conform thereto"—

(b). Because it is the most incompetent and least safe route it could locate over its lot." And

(c). Because it is "expensive to build and operate * * it" (the railroad company) "selected the most expensive location and will call on respondent" (the shoe company) "to pay the cost thereof."

The shoe company also now took and still holds the position in such controversy, in substance, that the decree of July 30, 1912, and the decree of this court affirming it as aforesaid on appeal, in so far as it concerned said right of way, merely gave to the shoe company the right to require it to be located so as to permit tracks on its lot at the point of entrance in the centre of the shoe company's building, if the shoe company demanded it. And the shoe company alleges that since its warehouse was built and its present tracks were laid conditions surrounding its business and property have so changed as to make it imperative that it should change the location of the entrance of the tracks in question into its lot and to put the tracks on the western portion of its lot, "as a more convenient and safe location for the tracks and for the right of way for a strip of land in connection with the same * *." And the shoe company takes the position that it has the right to insist upon such location, said decree notwithstanding, because when the 1906 agreement was terminated, by the express terms thereof the shoe company was "thereby re-instated to all of its rights under * *" (the 1903 deed) "as if this contract" (the 1906 agreement) "had not been made," and that under the 1903 deed the shoe company has the right of location of the railroad tracks on its own lot, with which the tracks on the right of way must connect when the latter is located.

Certain evidence, consisting of the testimony of a number of witnesses and diagrams filed therewith, was introduced both by the railroad company and shoe company upon the issues aforesaid made in the cause since the former appeal, as aforesaid. Thereupon on July 24, 1916, the decree of the

court below now under review was entered.   The provisions
of such decree which concern the proper location of the
right of way in question and the tracks thereon are as fol-
lows:

"As to the right of way for track purposes, to which said
shoe company is entitled—the court is of opinion, and doth
hereby decide, as follows, viz:

"1.   That by the notice dated May 27, 1914, and the plat
thereto attached, which notice and plat were duly served
upon the shoe company and are filed as a part of the rail-
road company's petition in this cause, the railroad company
definitely selected and located the strip for such right of
way;   that the strip, so selected and designated, complies
in all respects with the requirements of the decree hereto·
fore entered in this cause, as affirmed by the Supreme Court
of Appeals of Virginia; that the demand of the shoe com-
pany for a different location, and all of its objections to the
right of way selected by the railroad company, should be,
and are hereby, rejected and overruled; that the prayer of
the railroad company's said petition upon this point should
be, and is hereby, granted; and that the only right of way
for such track purposes, to which said shoe company is en-
titled, should be, and is hereby definitely and finally located
and established upon the strip and along the route so selected
and designated by the railroad company.

"2.   That the shoe company is in default in having failed
and refused to state whether the two tracks, or only one
track, shall be constructed on said right of way, and whether
it prefers to do the necessary construction, rather than have
the same done by the railroad company, that, therefore, the
shoe company itself should be, and is hereby, required to do,
or cause to be done, all and necessary and proper work and
construction upon said right of way, including either one or
two tracks, as it may prefer; that all such construction shall
be done under the supervision of the railroad company's en-·
gineer or engineers, and along lines and grades to be pre-

scribed by the railroad company within a reasonable time after definite written demand of the shoe company, stating whether one or two tracks are desired, and, if two, the point at which each track shall commence and terminate; that such written demand shall constitute a final election by the shoe company as to the number of tracks which shall ever be placed upon said strip for said shoe company or its assigns; that the shoe company shall make such written demand within thirty days after this decree becomes effective; that, thereafter, upon being furnished with such lines and grades, it shall proceed promptly with the work of construction, and shall complete the same in a reasonable time; but that it shall give written notice to the railroad company of the time when such construction will be commenced, in order that the said engineer or engineers may properly supervise the same, as herein required."

2. The positions taken in their pleadings by the parties respectively and the material facts bearing on the subject of their rights, respectively in, to and over the said twenty-seven foot strip of land, were as follows:

The following is the clause in the said 1903 deed which prescribed the rights of the parties touching the twenty-seven foot strip of land, viz.:

"As a part consideration of the deed said fair grounds company covenants that the said strip of land just east of and adjoining the lot hereby conveyed and fronting twenty-seven (27) feet on the north line of Broad street and running back two hundred and *twenty*-nine feet, four inches (299 ft. 4 in.) shall be kept open as an open space and said party of the third part shall at all times have free use of said twenty-seven (27) foot lot, with free ingress and egress on, to and through said lot and all parts thereof."

In the executory *contract* evidencing the purchase by the shoe company of the lot conveyed to it by the 1903 deed, which ante-dated such deed, there was a different provision as to said twenty-seven foot strip of land, namely: "It is

further agreed that the said party of the first part will keep open as a street, the twenty-seven (27) feet running along the eastern line of this property  *  *."

One position of the shoe company in the cause prior to and upon the former appeal, was that it was the beneficial owner of such strip of land, had the exclusive right of use of it; and that the railroad company had merely a bare legal title thereto.  Another position of the shoe company at that time was that the only right the railroad company had as to such twenty-seven foot strip of land was to have it kept open as " 'an open space,' yet it" (the railroad company) "has demanded that it be thrown open to be used as a street or driveway and it has threatened to use the same as a driveway not alone for its employees, but also for use by any and all patrons of said railroad company."

"The shoe company, prior to the former appeal, also alleged that its wagon is twenty-six and a half feet long and when it is at the entrance of your orator's warehouse on the east opening (of) said twenty-seven foot strip, it blocks the said strip of land as it has a right to do, and if the same were permitted to be used as a driveway it would greatly reduce the free use thereof by your orator and prevent it from using it as contracted for in said deed."    .

The position of the railroad company before and upon the former appeal as to said twenty-seven foot strip of land was that it was the owner of it in fee subject merely to the "free use" of such strip "for the purpose of 'free ingress and egress in, to and through' the same and all parts thereof; and that this respondent" (the railroad company) "is entitled to make or permit other persons to make any use of said strip which does not prevent complainant" (the shoe company) "from a reasonable use of the same for the purpose aforesaid and also to insist that the said strip 'shall be kept open as an open space.'  And this respondent denies that the complainant is entitled to the exclusive use of said strip for *any* purpose *  *."  The railroad company also

alleged that the shoe company had such strip enclosed by certain fences and was continually blocking said strip "by placing across the same a wagon whose length is only six inches less than the width of said strip."

Evidence was introduced which so far as material to be mentioned here was to the effect that the fences aforesaid were erected by the shoe company temporarily subject to the request of the railroad company for their removal and would be removed on such request; but that the use by the shoe company of its wagons, which were twenty-six and one-half feet long, did at times block the said twenty-seven foot strip from the passage of it by other vehicles.

Thereupon the decree of July 30, 1912, aforesaid, was entered, which as to said twenty-seven foot strip of land provided, so far as material to be noted here, as follows:

. "As to the twenty-seven foot strip of land, mentioned and described in the pleadings, being a strip of land fronting twenty-seven feet on Broad street, and adjoining the land of Stephen Putney Shoe Company on the east, and running back two hundred and ninety-nine (299) feet and four (4) inches—the court is of opinion, and doth decide, as follows, viz.:

"The defendant railroad company is the owner of said strip in fee simple, subject, however, to the easement therein of said shoe company. The said shoe company has a right of ingress and egress in, to and through said strip, and all parts thereof, and also has a right to enter the said strip, at any point thereof, from its own land adjoining the same and to use said strip in the receipt and delivery of its goods from and to its vehicles into and from any building upon its own land, such use to be exervised in a reasonable manner, but, in so doing, said shoe company must now block said strip unreasonably, so as to prevent other wagons passing through the same in single file. The said railroad company has the right to make any use of said strip not interfering with, or inconsistent with, the reasonable exercise by said

shoe company of its aforesaid rights, which rights are primary.

"And the said Stephen Putney Shoe Company, its officers, agents, servants and employees, are hereby perpetually restrained and enjoined from making use of said strip of land, other than such as hereinbefore set forth, and in the manner above described; and from obstructing, or continuing to obstruct, the said strip, or any part thereof, in any manner, or to any extent not hereinbefore permitted; and from enclosing, or continuing to keep enclosed, the said strip or any part, or either end, thereof; and from erecting, or maintaining, any fence upon any part, or at either end, of said strip; and from interfering in any way or at any time, with other persons in any use of said strip not inconsistent with the reasonable exervise by said shoe company of its rights hereinbefore set forth; and from doing any act or thing which will prevent the said strip, and all parts thereof, from being and continuing, at all times, an open space."

The decree of this court (the Supreme Court of Appeals) on said former appeal, upon review of so much of the said July 30, 1912, decree as referred to said twenty-seven foot strip of land, provided as follows: "* * the court is of opinion, for reasons stated in writing and filed with the record * * *" that "* * * in so far as it determined the rights of the parties in the twenty-seven foot strip of land in the bill and proceedings mentioned, it must be reversed. And this court proceeding to enter such decree as the said circuit court ought to have entered as to the said strip of land fronting on Broad street, and adjoining the land of said Stephen Putney Shoe Company on the east and running back two hundred and ninety-nine feet and four inches, the court doth adjudge order and decree that the Richmond, Fredericksburg and Potomac Railroad Company is the owner in fee of the said twenty-seven foot strip of land, subject, however, to the appellant

shoe company's easement therein; that the said shoe company and the said railroad company are entitled to have the said twenty-seven foot strip of land kept open as an open space without the right on the part of either to erect or maintain a fence upon any part or at either end thereof; that the said shoe company has the right at all times to have the free use of the said strip of land for ingress and egress in, to and through said strip of land and all parts thereof to and from all buildings upon its said land and to its vehicles standing upon or across said strip of land; and to every other accommodation and advantage which said strip kept open as an open space or court may furnish to the said property of the said shoe company; and that the said railroad company, its agents, employees or patrons are not entitled to made use of said strip of land in any manner that will interfere with or obstruct the said shoe company in the full enjoyment of its said easements."

In its petition subsequently filed in the cause the railroad company alleged that the shoe company had not removed but still maintained "gates and fences upon and enclosing said strip;" also  *  *  *  that the shoe company "claims the right to use a portion of said strip as a flower garden, and to prevent employees and patrons of your petitioner from passing through such portion; and also claims the right to use said strip for storing boxes, etc.; and also claims the right to keep its vehicles standing across said strip, even when they are not being loaded or unloaded—in fact, claims the right arbitrarily to block said strip, and to the exclusive use and occupation thereof, for any purpose and period of time, whether temporarily or permanently.

"All such claims your petition most emphatically denies; and, as your petitioner has thus far been prevented by the shoe company from making any use whatever, in any manner, or at any time, of said strip, your petitioner's only recourse is to invoke the court's decision, defining precisely all rights and duties of the parties."

In its answer to such petition the shoe company takes the following positions as to said twenty-seven foot strip of land, namely:

"* * * this respondent is ready and willing to remove the fences at the north end of said twenty-seven foot strip of land, but that the fence running along the eastern side thereof is a fence dividing the said twenty-seven foot strip from the adjoining lot to the east thereof, owned by other parties.

"This respondent says that the flower garden referred to by petitioner, railroad company, is largely located on the private property of this respondent, which lies to the west of the said twenty-seven foot strip of land, and on the Broad street front there is only a partial hedge.

"Respondent would have long since removed the fence at the north end of said strip, but for a conference between Mr. T. P. Giles of respondent company and Mr. W. D. Duke of railroad company in which the fence was not required to be removed.

"This respondent denies any allegation contained in said petition to the effect that this respondent claims any rights in said twenty-seven foot strip of land, beyond the rights granted to it under the various deeds and contracts and under the decisions of the Supreme Court of Appeals of Virginia."

Certain evidence was introduced by both parties bearing upon the issue as to the use being made of said twenty-seven foot strip by the shoe company, which is referred to below in the opinion of the court.

Thereupon the decree of the court below now under review was entered, containing the following provisions concerning the rights of the parties in, to and over said twenty-seven foot strip of land, namely:

"As to the twenty-seven foot strip of land, fronting on Broad street, and adjoining the land of the shoe company

on the east, and running back 299 feet and 4 inches—the decree entered by the Supreme Court of Appeals of Virginia has adjudged that the railroad company 'is the owner in fee of the said twenty-seven foot strip of land, subject, however, to the 'shoe company's easement therein; that the said shoe company and the said railroad company are entitled to have the said twenty-seven foot strip of land kept open as an open space without the right on the part of either to erect or maintain a fence upon any part or at either end thereof; that the said shoe company has the right at all times to have the free use of said strip of land for ingress and egress in, to and through said strip of land and all parts thereof to and from its own land adjoining the same; to the use of the said strip of land in the receipt and delivery of its goods into and from all buildings upon its said land from and to its vehicles standing upon or across said strip of land; and to every other accommodation and advantage which said strip kept open as an open space or court may furnish to the said property of the said shoe company; and that the said railroad company, its agents, employees or patrons are not entiled to make use of said strip in any manner that will interfere with or obstruct the said shoe company in the full enjoyment of its easement.'

"Coming, now, to decree upon this branch of the case, this court is of opinion, and doth decide, as follows, viz:

"1.  The aforesaid rights of the shoe company in said twenty-seven foot strip are superior to the rights of the railroad company therein; but the railroad company has the right to make or permit any use of the whole or any part of said strip, for any purpose and at any time, provided, always, that the shoe company is not interfered with or obstructed in its superior right to the full enjoyment of its said easement, and that no fence or other obstruction is placed upon said strip.

"2. The railroad company has the right to permit persons

and vehicles to pass through any and all parts of the said twenty-seven foot strip, at any time and for any purpose, provided, always, that the shoe company is not thereby obstructed or interfered with in the exercise and enjoyment of its superior rights aforesaid.  Such use of the said strip by other persons and vehicles is not inconsistent with the existence of the aforesaid rights of the shoe company; it is the only exercise by the shoe company of its said superior rights which is not to be obstructed or interfered with by such passage of other persons and vehicles.

"3. The shoe company has no right to maintain upon the said strip, or any part thereof, or at either end thereof, any fence, hedge, gate or other enclosure, nor the sign or posts thereto attached, described in the testimony of E. M. Hastings, nor the pile of fence posts described in said testimony.  And the said shoe company, its officers, agents, servants and employees are hereby perpetually restrained and enjoined from obstructing, or continuing to obstruct, the said strip, or any part or either end thereof, by any fence, hedge, gate, or other enclosure, or by any such sign or posts; and from hereafter maintaining, upon said strip, or any part or at either end thereof, any fence, hedge, gate, or other enclosure, or any such obstruction as aforesaid; and from doing any act or thing in violation of the aforesaid right of the railroad company to have the said strip kept open as an open space."

*Samuel A. Anderson* and *A. G. Collins,* for the appellant.

*John S. Eggleston,* for the appellee.

SIMS, J., after making the above statement, delivered the following opinion of the court.

[1]    As appears from the above statement this is the

same cause which was before us on a former appeal therein (*Stephen Putney Shoe Co.* v. *R. F. & P. R. R. Co.*, 116 Va. 211, 81 S. E. 93) ; the parties, the issues and the material facts, consisting of writings to be construed and the actions of the parties thereunder are all the same as shown by the record on the present as on the former appeal in so far as some of the matters in issue now before us are concerned. And there is no controversy in the cause over the well settled rule that, such being the case, the decision and decree of this court on the former appeal is the law of the case in so far as such decree passed upon and adjudicated the questions which are presented for our decision upon the present appeal. The points of difference between the parties on that subject are merely as to how far the decree of this court on the former appeal did pass upon and adjudicate such questions. There are also further points of difference between the parties as to what should be the decision of certain questions in issue which they claim, respectively, were left open for future consideration and determination by the decree aforesaid on the former appeal. We will consider and pass upon the questions raised by such points of difference in their order as stated below.

[2] 1. We will consider first the controversy in the cause upon the subject of what is the proper location of the right of way for certain railroad tracks as provided for in the deed of 1903 mentioned in the above statement.

1a. We are of opinion that the decree of this court on the former appeal in its affirmance of the decree of the court below of July 30, 1912, in so far as it concerned the subject now under consideration, (such provisions of such decrees being quoted in the above statement) passed upon and adjudicated the question of the proper location of the right of way under consideration at its point or place of departure from the northern line of the lot of the shoe company and fixed the location of such place of departure of such right of

way as the railroad company has now located it, as shown by the above statement and the diagram last above exhibited therein, being where the right of way indicated by the lines marked "C" on such diagram form a junction with what is designated in the record as the northern line of the boundary of the lot of the shoe company, such junction being somewhat to the east or southwest of the centre of such northern line, and is "so located as to permit the proper operating connection of tracks thereon with the present tracks" (on the shoe company's lot) "at the point of entrance into said shoe company's building" (the latter point being in the centre of such building), as was required by paragraph 3 of said decree of July 30, 1912, which was affirmed on the former appeal.

The question whether such junction point or place of departure of the right of way from the northern line of the lot of the shoe company had been permanently fixed and located under said 1903 deed, or whether it could be changed, was put directly and expressly in issue by the pleadings and proof of both the shoe company and railroad company in the proceedings in the cause prior to and upon the former appeal, and the material facts bearing on such issue were also the same as shown by the record in the former, as on the present appeal, as is set forth in detail in the above statement. It necessarily resulted from the position taken by the shoe company prior to and upon the former appeal as to what its action had been with respect to its exercise of its rights under the 1903 deed to locate the railroad tracks upon its own lot, that the conclusion was unescapable that it, at least, had elected and selected such location once for all under such deed; it could, of course, make but one election and location under such deed, and that carried with it the further conclusion that the railroad company, since it had acquiesced in that location, was bound under the 1903 deed to so locate the right of way in question on its land as

to connect with the tracks so located on the shoe company's lot; which settled the question of whether the point of juncture of such right of way with such tracks could be afterwards changed. Accordingly, the decree of the court below of July 30, 1912, and its affirmance on appeal as aforesaid expressly passed upon and adjudicated such question and expressly fixed the location of such point or place of departure of such right of way as aforesaid. That, thereby and thereupon, became the law of the case, and, hence, the proper place of location of such point or place of departure of the right of way was no longer a subject of inquiry or of consideration or determination by the court below nor can it be re-opened by us on the present appeal.

1b. The decree of this court on the former appeal did leave open for future consideration and determination the location of the said right of way from its said point or place of departure thence on to its junction with the main line of railroad on the railroad company; the adjudication on the subject upon the former appeal affirming the decree of the court below then under review, being merely, in the language of the latter decree, so far as material, that—"said railroad company is now and hereby authorized and required to select and locate the strip aforesaid along a route to be designated by said railroad company, provided such route is reasonably safe and convenient *    *."

We come now, therefore, to the consideration of the only points of difference between the shoe company and railroad company on the subject of the proper location of said right of way which are open for our consideration upon the present appeal.

The positions of the shoe company on these points are, in substance, as noted in the above statement, that the location of the right of way which has been now made by the railroad company from the said point or place of departure of it to the main line of the railroad company is not "reasona-

bly safe and convenient" as required by the decree of July 30, 1912 for the following reasons:

(a). Because "it contains reverse curves * * is filled with curves and the natural lay of the land is irregular *requiring* great danger in operating the cars upon a track built to conform thereto."

(b). Because "it is the most incompetent and least safe route it could locate over its lot." And

(c). Because it is "expensive to build and operate * * * it" (the railroad company) "selected the most expensive location and will call on respondent" (the shoe company) "to pay the cost thereof."

These positions assail the location of the right of way in question, on three grounds, namely:

First: Because the operation of the cars on the tracks thereon will be dangerous by reason of the curves therein and the grade thereof, if the tracks are built to conform to the natural lay of the land.

Secondly: Because the operation of the cars will be expensive. And

Thirdly: Because it is the most expensive to build and operate.

We will consider these positions in their order as stated.

First. As to the danger of operation of the cars, if the tracks are built to conform to the natural lay of the land.

This is as yet a moot question. The decree aforesaid involved in the former appeal in the cause did not require the railroad company to disclose in its notice to the shoe company the *grade* proposed. It did require, however, all construction to be "done under the supervision of said railroad company's engineers and along lines and grades to be prescribed by said railroad company." It appears from the evidence in the cause that no grades have as yet been prescribed by the railroad company for the proposed tracks. Its position taken in its reply brief in the cause is that it

has never been its "intention to establish any 'but a reasonable grade which could be successfully and conveniently operated throughout the entire length to the Putney building';" and that it has never intended to prescribe the building of the tracks "to conform to the natural lay of the land."

Secondly. As to the expense of operating the cars on the tracks as now proposed by the railroad company: there is testimony in the cause for the shoe company and railroad company on the question of whether the cars on the tracks as proposed by the railroad company can be operated without steam or equivalent motive power, i. e. by hand, by the use of pinch bars, as easily as on tracks if located without the reverse curve or without as great curves as there will be in the tracks if located as proposed. The preponderance of the evidence is to the effect that if the pinch-bar method of operating the cars were adopted they could be more easily operated on a track with lesser curves in them. But we find nothing in the deed of 1903, when construed in the light of the situation and circumstances surrounding the parties, which warrants the construction of it to the effect that the shoe company is entitled to have the right of way for said tracks so located that the latter can be, or that they should be so constructed that the cars thereon can be operated the entire length of the tracks by hand, by the use of pinch-bars, without other motive power. On the contrary we think that the motive power in use by the railroad company in 1903 for the placing of cars on spur and switch tracks, namely, that of locomotives, or some equivalent motive power, was in contemplation of the parties for the movement of cars to and from said main line of railroad upon and from said tracks at the time of the covenant in the deed of 1903, which fixed the rights of the parties as to such right of way and tracks; and that the shoe company is not entitled

to have the "convenient" character of the proposed tracks required by the decree of July 30, 1912, measured and determined by their fitness for use for the movement of cars thereon to and from the main line of railroad by any other motive power than steam locomotive power or its equivalent. The tracks should be so constructed that it would be practical for the shoe company to move single cars, empty or loaded, for short distances to and from its building by hand-power by the use of pinch-bars, since there is testimony in the case tending to show that such use of hand-power in moving cars to such extent was usual and customary among mercantile concerns under similar conditions, and hence must be taken to have been in contemplation of the parties at the time of the execution of said deed of 1903; and the preponderance of the evidence in the cause shows that if the grade of the tracks is on a level at the curves on their ends nearest the lot of the shoe company that that will be practical.

Thirdly. As to the route now proposed by the railroad company for the railroad tracks aforesaid being the most expensive to build and operate.

The evidence in the cause is to the effect that the expense of building the railroad will be less on the route mentioned than on that proposed by the shoe company.

The preponderance of the evidence is that if the roadbed is constructed upon a reasonably proper grade so that it can be reasonably "conveniently operated throughout the entire length to the Putney building," the cars to and from the main line of railroad can be operated by steam locomotive power, or its equivalent, without any excessive expense, and that single cars, loaded or empty, can be moved with reasonable care for short distances to and from its building by the shoe company by hand power by the use of pinch-bars, which will eliminate any excessive expense in such operation of the cars.

53

Our conclusion, therefore on the branch of the cause considered next above, is that the location of the right of way aforesaid, which has been selected by the railroad company as aforesaid, complies with the requirements of the former decrees in the cause and that there is no error in the decree of the court below now under review in so deciding.

[3] 2. We have now to consider the controversy in the cause upon the subject of what are the rights of the parties, respectively, over and upon the twenty-seven foot strip of land mentioned in the statement of the case preceding this opinion.

As set forth in such statement the question of what were the rights of the parties aforesaid, respectively, in, to, over and upon such strip of land under the provisions of the deed of 1903 and of the preceding contract of sale quoted in such statement of the case was involved on the former appeal. The proper construction of such provisions on such subject in such deed and contract were in issue between these same parties to this cause on the former appeal; the material facts bearing on such issue were also the same as shown by the record on the former as on the present appeal; and, under the well settled rule above adverted to, in so far as such rights have been passed upon and adjudicated by the opinion and decree of this court on the former appeal, such adjudications then became and is now the law of the case. The question which first confronts us on this branch of the case, therefore, is how far the decree of the court below now under review is in accord with the decree of the court on the former appeal touching the same matters in controversy then and now in issue.

The chief matter of controversy now before us, with respect to said twenty-seven foot strip of land, is, as appears from the statement of the case preceding this opinion,

whether, in addition to the use of such strip by the railroad company as a passage way to and from Broad street to the property of the railroad company as a walk way for its officers and employees when using it in such a way as not to interfere with the rights of the shoe company as fixed by the decree aforesaid on the former appeal, the railroad company has the right to use such strip of land "as a driveway not alone for its" (officers and) "employees, but also for the use of any and all patrons of said railroad." The language last quoted is from a pleading in the cause prior to the former appeal and the precise question of whether the railroad company had the right to use such strip of land as a driveway as aforesaid, "not alone for its employees, but also for use of any and all patrons of said railroad" was before this court for decision on the former appeal. The position of the shoe company then was, and is now, that to make of the said strip a driveway for all of the patrons of the railroad company would make it a public street for all practical purposes touching the rights of the shoe company over and upon such strip of land.

As will appear from the opinion of this court on the former appeal it was then held that since the executory contract of sale preceding the deed of 1903 contained the provision that the vendor "will keep open as a street" the said strip of land, and such provision was changed when the deed of 1903 came to be made, the provision contained in the deed, on the subject, being substituted for said provision in the executory contract of sale, the former must be construed in the light of the consideration that it was a substitute for the latter provision, and the opinion of this court was, in substance, that the railroad company was not entitled to make such use of said strip of land as would be made of it if it were a street and it reversed the preceding decree of the court below in its provisions which allowed the use of such strip as a driveway, which will be hereinafter more specifically adverted to.

The decree of the court below now under review, in its dealing with the subject now under consideration, follows very closely the decree of this court aforesaid on the former appeal, as appears from the quotation from it given in the statement preceding this opinion; but it does decree that the railroad company "has the right to permit * * * vehicles to pass through any and all parts of the said twenty-seven foot strip at any time and for any purpose * * * ;" and it is of this provision in such decree, in so far as the twenty-seven foot strip of land is concerned, that the shoe company now complains. Such use as so allowed is not confined to the officers or employees and patrons of the railroad company, but permits a general use by any and all persons with the assent of the railroad company—which means such use by the public generally if permitted by the railroad company. This is, in substance, the very provision of the decree of the court below of July 30, 1912, on the subject now under consideration, which was reversed by the decree of this court on the former appeal; only, the decree now under review goes farther and is less restricted in its express allowance of a use of the strip as a driveway. It is true that such provision is coupled with the limitation "provided always that the shoe company is not thereby obstructed or interfered with in the exercise and enjoyment of its superior rights aforesaid;" but the same proviso was, in substance, contained in the decree of July 30, 1912, on this subject, yet such decree was reversed as aforesaid. The provisions in the decree of July 30, 1912, touching the rights of the railroad company with respect to the use of said strip as a driveway was as follows as appears from the terms thereof quoted in the above statement: "Said shoe company must now (not) block said strip unreasonably, so as to prevent other wagons passing through the same in single file. The said roalroad company has the right to make any use of said strip not interfering with, or

inconsistent with, the reasonable exercise by said shoe company of its aforesaid rights, which rights are primary." Such were the provisions of such decree under consideration · by this court upon which its former opinion, decision and decree on this subject were rendered.  The result thereof, therefore, was the holding that a use of said strip as a passage way for wagons "in single file" subject to be interrupted by the reasonable exercise by the shoe company of its rights of easement was not permissible on the part of the railroad company.  Such holding was thereby made the law of the case.

The decree now under review does not confine the use in question to wagons "in single file." Otherwise its provisions on this subject are substantially the same as those of the decree of the court below which was reversed as aforesaid.

In truth any substantial use of said strip as a driveway by all of the patrons of the railroad company would be inconsistent with the "superior rights aforesaid" of the shoe company.

It is true that the evidence in the cause is meagre as to the frequency of the use which the shoe company has heretofore made of said strip as a driveway or as to how often it is blocked by its twenty-six and one-half foot wagons standing across the strip to be loaded or unloaded; and it seems from the record that for the greater part of the time the whole of the strip is not occupied by the use the shoe company makes of it for the purposes for which it is entitled to use it; but the evidence shows that such strip is so used by the shoe company as it has need therefor and that it is the only possible way for ingress and egress of the vehicles of the shoe company to and from its stables, and is the only open space upon which it can load and unload these vehicles and that such strip is at times entirely obstructed by such use.  And it is manifest that the use of such strip

as a driveway by the patrons of the railroad company and others, or even by such patrons alone, would, in practice, inevitably produce innumerable collisions and endless conflict between the agents and employees of the shoe company in its rightful use of said strip and those using it as a driveway under the permission of the railroad company. In view of this situation which inheres in the very nature and character of the use of the strip as a driveway by the public generally, or even by the patrons of the railroad company, which serves the public generally, such use is impracticable. It would be in conflict with the dominant right of the shoe company adjudicated by the decree of this court aforesaid entered on the former appeal which provided for the shoe company "at all time to have the free use of said strip of land for ingress and egress in, to and through said strip of land and all parts thereof to and from its own land adjoining the same; to the use of the said strip of land in receipt and delivery of its goods into and from all buildings upon its land from and to its vehicles standing upon or across said strip of land; * * * and that said railroad company, its agents, employees or patrons are not entitled to make use of said strip in any manner that will interfere with or obstruct the said shoe company in the full enjoyment of its said easement." Indeed, we are of opinion that any use of said strip as a driveway, even by the officers and employees of the railroad company if it were so frequent as to amount to such a substantial use as to be of any worth to the railroad company would inevitably at times "interfere with or obstruct the shoe company in the full enjoyment of its easement," and hence would be impracticable, in view of the dominant rights of easement of the shoe company aforesaid. Theoretically this may not be so, in view of the proviso contained in the decree now under review, above quoted; but practically it is so, as we think. It is a law of physics that two

objects cannot occupy the same space at the same time; and two or more moving objects, of the like character, seeking to use the same space, at the same time, where the right of such use of one is dominant, will inevitably produce conflict of rights. The situation is wholly different from what it would be if these rights were equal, as is true of vehicles on a public highway, in which case mutual concession or a law of the road would serve to avoid conflict of rights.

We are, therefore, of opinion that the effect of the decree aforesaid entered on the former appeal was to adjudicate that the railroad company has not the right to itself use, or to authorize any one else to use, said strip of land as a driveway; and hence we are of opinion that the decree of the court below under review in this particular is not in accord with the former decree of this court.

As to the right of the railrod company "to permit persons * * to pass through any and all parts of the said twenty-seven foot strip, at any time and for any purpose, provided always, that the shoe company is not thereby obstructed or interfered with in the exercise and enjoyment of its superior rights" fixed by the decree aforesaid on the former appeal, which right is allowed the railroad company by the decree of the court below now under review: As the property of the railroad company is now used and as the said strip of land has at present no walkway for persons, its use as a passage way by persons would likely be small and would be practical without causing interference with the full enjoyment of its easement by the shoe company; but if it were used as a walkway by the public generally, in passing from Broad to Marshall street or if the railway were to locate a passenger depot on its property and said strip were used as a passageway for its passengers to and from Broad street, it is very probable that thereby interference with and obstruction of the full enjoyment of said easement by the shoe company would be

caused. Such a situation, however, as we understand the record, has not yet arisen. Hence we are of opinion that the record does not disclose that the decree under review is not in accord, on the subject under consideration, with the decree aforesaid entered on the former appeal.

As to the right to have or maintain on said strip the "gates and fences" which are located thereon and the alleged claim of the shoe company of the right to use a portion of the strip as a flower garden and to use the strip for storing boxes, etc., and the right to keep its vehicles standing across said strip even when they are not being loaded and unloaded, drawn in question before use on the present appeal, as noted in the statement above, the shoe company does not claim in its pleadings in the cause to have any of such rights, and it is apparent that such rights have been denied to it by the decree of this court on the former appeal. So that, in so far as such subjects are mentioned, among others, in the decree now under review, we are of opinion that such decree is in accord with the decree aforesaid on the former appeal and in so far as not mentioned the denial of such rights is, in effect, adjudicated by the last named decree.

Our conclusion, therefore, on the subject of the rights of the parties with respect to the said twenty-seven foot strip of land, is that as such strip of land and the adjacent property of the railroad company is now situated and used, the decree under review correctly adjudicates such rights and is in accord with the decree of this court on the former appeal, except in the single matter of the right of the railroad company to use or permit the use of said strip as a driveway; but that as to this matter there is error in the decree under review.

For the foregoing reasons we are of opinion to affirm the decree complained of in all respects except in so far as it concerns the rights of the railroad company to use or permit

the use of the twenty-seven foot strip of land in the bill and proceedings mentioned as a driveway.  The decree will be amended so as to deny such right to the railroad company. We are of opinion to provide in the decree of this court, however, that it is entered without prejudice to the right of the shoe company, or its successors or assigns, to seek relief in future by any suit or action which it might lawfully institute but for the said decrees, and the present decree of this court in this cause, in the event that it should be found impracticable to construct the roadbed for the tracks aforesaid to such grades and lay the tracks thereon in such manner, along the right of way therefor aforesaid, that cars may be operated thereon by steam locomotive power or an equivalent motive power, to and from the main line of railroad of the railroad company with reasonable safety and convenience, and so that single cars, loaded or empty, can be moved with reasonable care on the two curves in the tracks nearest the shoe company's lot, by the use of pinchbars; or in the event that the use of said twenty-seven foot strip of land as a passageway of persons, without interference with and obstruction of the full enjoyment of said easement by the shoe company, should be found in future to be impracticable from any cause not due to the fault of the shoe company or its successors or assigns, as the case may be.  And we are of opinion to award the costs of this appeal to the railroad company as the party substantially prevailing.

*Amended and affirmed.*